



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 1 2 2020

CLERK, U.S. DISTRICT COURT
By_____
　　　　Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.   No. 4:20-mj-520

CURTIS JASON NOAKES (01)

## COMPLAINT

I, the undersigned Complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

On or about July 30, 2020, **Curtis Jason Noakes,** knowingly distributed any child pornography by any means, including by computer, using any means and facility of interstate and foreign commerce. Specifically, **Noakes** used the Internet and a third party messaging application to distribute the following visual depiction of a minor engaged in sexually explicit conduct:

| File Identifier | File Description |
|---|---|
| [redacted]fea125d4ec | This video file depicts a nude adult female, a nude adult male and a nude toddler aged minor child. The adult female is holding the minor child face down with the child's head positioned towards the adult female and the child's buttocks are towards the adult male. The adult female manipulates the buttocks of the minor child to expose the child's anus towards the adult male. The erect penis of the adult male penetrates the anus of the child. Sound is available on the video file and the child can be heard whimpering and then crying as the adult male penetrates the child's anus with his penis. |

In violation of 18 U.S.C. § 2252A(a)(2)(A).

I further state that I am a Special Agent with the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts gathered through my investigation:

Criminal Complaint - Page 1 of 18

# INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and I have been employed in this capacity since October 2003. I am currently assigned to the Dallas Division of the FBI. As a federal agent, my duties include, but are not limited to, the investigation and enforcement of Titles 18, 21 and 31 of the United States Code (U.S.C.). I am an "investigative or law enforcement officer of the United States" within the definition in 18 U.S.C. § 2510(7), in that I am an agent of the United States authorized by law to conduct investigations of, and make arrests for, federal offenses.

2. I am currently assigned to a Crimes Against Children and Human Trafficking Task Force, wherein my duties and responsibilities include investigating criminal violations relating to the sexual exploitation of children, such as the illegal production, transportation, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have investigated these violations since 2013 and have gained expertise in these types of investigations through training in seminars, classes, and my everyday work.

3. In addition, I have received specialized training in the investigation and enforcement of federal child pornography laws and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. §2256) in all forms of media, including computer media. I have been involved in numerous child pornography investigations and am very familiar with the tactics used by child pornography offenders who collect and distribute child pornographic material.

4. The statements contained in this affidavit are based on information provided by FBI Special Agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by FBI agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent with the FBI.

5. This affidavit is submitted in support of a criminal complaint charging **Curtis Jason Noakes**, with violating 18 U.S.C. § 2252A(a)(2)(A), Distribution of Child Pornography. There is probable cause to believe that beginning on or about July 30, 2020, in the Northern District of Texas, **Curtis Jason Noakes** committed the offense of distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A).

## OVERVIEW OF INVESTIGATION

A. **Background of Investigation**

6. On or about July 21, 2020, at approximately 3:11 PM Central Time[1], SA Jennifer Mullican, who is certified to act online in an undercover capacity (hereafter "Undercover Agent"), joined the Kik Messenger[2] (hereinafter, "Kik")

---

[1] All times referenced hereafter are stated as Central Time.
[2] Kik Messenger is a free instant messaging mobile application designed and previously owned by Kik Interactive, Inc., which was recently purchased in or around October 2019 by MediaLab, Inc., a U.S. based Technology Company headquartered in California. Kik Messenger uses the Internet to allow users to send and receive instant messages, photos and videos.

group referred in this affidavit as "Group A."[3] There were 49 members of Group A, and upon joining, the Ragebot[4] posted a welcome message that read:

> "There's 49 people here, removing the last active member from #Group A. [The Ragebot removed a member from the group.] Welcome to my Tabu group anything goes in this group. Rules: 1. No pm [private message] without asking 2. State ASL [Age, Sex, Location] and what you are into 3. You need to have a profile picture 4. Don't be Rude 5. Respect others' tabu 6. Stay Active and post as non-active ones for 4 or more days will be kicked out 7. You may share anything you like. If someone disobeys these rules insta(sic) booted. If you are good with all of this and did it all say "I love tabu.""

7. Although spelled slang as "tabu" instead of "taboo," based on my training and experience, I am aware that "taboo" in this context is a term for incest or family sex involving children.

8. Immediately upon entering the group, Undercover Agent posted her information as the rules directed. In response, Undercover Agent was greeted by other members with some asking various questions and other users stating they hoped Undercover Agent was a mother. Undercover Agent monitored the content of the room and observed image and video files depicting child pornography being shared by various members of the group. Also, Undercover Agent observed members posting their "tabu" interests of "incest," "young," and "mom daughter."

---

[3] The actual name of the group is known to investigators; however the group name has been redacted due to other ongoing investigations.

[4] A Ragebot is an administrative feature of Kik that was created for making group management easier. This feature removes spam bots that join public groups and can be evolved for other functions such as logging member activity and posting rules for users upon entering the group.

**Criminal Complaint - Page 4 of 18**

9. Later the same day, one of the group creators, hereinafter "D.A."[5], told other group members that if Undercover Agent verified with her then Undercover Agent would be promoted to an "admin," or one of multiple group administrators. A group administrator can promote other group members to administrative rolls, can set functions of the Ragebot in the group and can ban members from the group for violating rules. Undercover Agent did not immediately respond to the message and continued to monitor the room activity. Undercover Agent observed members posting their "tabu" interests of "incest," "young," and "mom daughter."

10. The next morning, July 22, 2020, upon verifying as requested by a group "admin," Undercover Agent herself was promoted to an "admin" for the group. Undercover Agent continued monitoring the communications within the group and observed that one user specifically asked if anyone had "CP," and when prompted, this member confirmed that "CP" meant "child porn."

11. Over the next week, Undercover Agent continued to monitor the room taking screen captures of communications when another member either shared a child pornography image or video file or when members discussed their specific interest in sex acts with minors in their family or other children in general. Undercover Agent downloaded the image or video files shared to an undercover cellular device. For further legal process, Undercover Agent documented the Kik username of the member who shared the files depicting child pornography.

---

[5] This Kik Username is known to Your Affiant, however the name is being redacted to protect the identity of a possible minor and due to ongoing investigative activity.

**Criminal Complaint - Page 5 of 18**

### B. Criminal activity conducted by Kik user "ddbigmeat"

12. Thereafter, on or about July 28, 2020, at approximately 11:21 AM, Kik user "ddbigmeat" (hereinafter "DD") joined the group chat and identified himself as a 27-year-old male living in Texas. The profile picture depicted a shirtless adult male whose back was to the camera who appears to be taking the photo in a mirror. Less than two hours after joining the group, DD commented "very nice" and then, "dang I can't post yet," following a post by another member of a video file that depicted a minor female wearing only black lace pantyhose and a strap-on sexual device engaging in a sex act with an adult female who was nude from the waist down.

13. Undercover Agent previously observed other members post that they were in "Kik Jail" upon entering the group chat. This references another feature of the Ragebot which prevents new group members from posting image and video files in the group for a designated amount of time. In this group, the time limit was approximately twelve hours. Undercover Agent also noted that the Ragebot would post the message, "If you would like to share but still in Kik jail send to an admin they will share it for you ANYTHING GOES."

14. Immediately after DD posted the message that he was unable to share files, "D.A." posted "Share," and the Ragebot message above posted to the group. D.A. then added, "so can send to me lol." Within minutes, DD posted, "Sent (smiling emoji)." Almost instantly, D.A. sent a series of messages with each message post either an image or video file depicting child pornography.

D.A. added, "someone is sharing that lol," followed by, "Idk (I don't know) who it is." The files shared by D.A. depicted child pornography files involving infant and toddler aged females.

15. Messaging continued in the group throughout the evening into the next day, July 29, 2020. Although few files depicting child pornography were posted to the group, throughout the day the conversations continued to be sexual in nature and focused on sexual acts involving minors.

16. The following day, on or about July 30, 2020, Undercover Agent observed DD post a series of image files of child pornography depicting toddler aged females. These images appeared similar to the images shared by D.A. to the group from an "unknown member." Undercover Agent scrolled back through the group chat in an attempt to identify DD and capture screenshots to document his group activity.

17. Upon review of the group communications from prior days, Undercover Agent noted that DD had previously requested to chat with Undercover Agent via private message, however Undercover Agent had missed these requests. Knowing that DD had been posting in the group earlier, Undercover Agent then posted to the group the message, "happy wet Wednesday my friends (laughing emoji)" to see if DD would again initiate a private conversation.

18. Others in the group responded in greetings to Undercover Agent and one member posted it was only Tuesday where he lived. The member asked if Undercover Agent resided in Australia and Undercover Agent responded that she lived in Texas. DD responded to the group, "ooh me too (smiling emoji)." Undercover Agent added she lived in Dallas and asked specifically where DD resided. DD stated that he lived in "Fort Worth." DD again asked in the group, "[Undercover Agent[6]], can I pm you?" Undercover Agent responded, "Sure DB(sic) but just got to work so my bosses are around."

19. Within minutes, on or about July 30, 2020, at approximately 9:15 AM, Undercover Agent received a private message from DD stating, "finally get the chance to talk to you (emoji with tongue sticking out)," then added, "so what's your fav taboo?" Undercover Agent responded that her taboo was young, then added, "not as yng as those pics u post lol." DD asked if Undercover Agent preferred boys or girls and inquired of her favorite ages. Undercover Agent indicated her preference was for girls between the ages of eight and eleven.

20. Continuing, DD expressed his appreciation for the age range and asked, "would u lick my cum from a tight 8yo pussy?" Undercover Agent said she would not, as she would be first to be "in that" before DD "made it messy." DD asked if Undercover Agent would let him engage with her sexually and Undercover Agent advised, "nope, I don't do dick sorry only lil dolls for me."

---

[6] Your Affiant's Undercover Username has been redacted due to on-going investigations.

**Criminal Complaint - Page 8 of 18**

In clarification, DD asked if Undercover Agent would "lick a cute lil toddler if u had the chance?" Undercover Agent specified she would prefer someone who could reciprocate a little and DD replied, "you'd be surprised out of what u could get from a slutty lil toddler (winking emoji)."

21. After sending the above message, DD then shared two image files depicting child pornography involving a minor female, estimated to be three or four-years in age, who is nude in both images but is wearing a spiked, black dog collar in another image. In one image the minor female is in close proximity to an adult female who is holding a red sexual device at her genitals and the sexual device is penetrating the mouth of the minor female. In the second image, the minor female has one hand inserted in the exposed vagina of a nude adult female.

22. In response to Undercover Agent messaging that she thought the images were "hot," DD offered to send more, stating, "I have lots of those girls. Want more?" Undercover Agent told DD to send whatever files he wished and described he was getting her "worked up" while she was at work. DD responded by sending four additional image files depicting child pornography.

23. To determine whether DD had access to minor children, Undercover Agent asked, "u active?" DD shared another image, depicting a nude minor female whose genitals are being penetrated by the erect penis of an adult male, and stated, "not at the moment but I wishhh(sic)." DD asked the same of Undercover Agent, who responded, "my dau ain't into me no more (crying emoji)."

DD then sent a series of messages containing image files depicting a minor female who is nude except for a black fishnet pantyhose whose genitals are being penetrated by a red sexual device being held by an adult female.

24. As the conversation continued, DD sent four image files depicting a nude adult female who is holding a nude toddler. In some of the images the tongue of the adult female is in close proximity to the anus and genitals of the nude toddler. DD also sent a series of messages containing image files depicting a nude adult female and a nude minor female. Some images depict the minor female's genitals exposed towards the camera in lewd and lascivious manner and other images depict the genitals of a minor female being digitally penetrated. Undercover Agent responded that she was getting "hot" from viewing the image files and then asked DD his age of preference. DD replied, "2-6."

25. The word "camera" could be observed below some of the images sent by DD. Based upon your Affiant's experience utilizing the Kik Messenger application, the word "camera" denoted at the bottom of an image file sent in a message means that image was captured "live" using the camera within the Kik application and was not an image selected and shared from the user's phone gallery. However, though DD was sharing images denoted with the "live" caption, your Affiant had previously observed some of these images in other investigations.

26. As the conversation continued into the mid-morning hours of July 30, 2020, DD turned the conversation to hands on sexual offenses involving minor females. For example, at approximately 11:20 AM, DD explained:

| From | Message |
|---|---|
| DD | My fantasy is to lick a baby girl while her mommy is breast feeding her. Maybe even rub my cock over her puffy slit too. |
| Undercover Agent | Fuck…u got my mind racing never thought like tht(sic) when I was wit(sic) my girl. |
| DD | Aweee I wish u did and u could have soo much fun. |
| Undercover Agent | Yeah but tht(sic) the worst when she's no longer interested. |
| DD | Yea I feel u but you could always babysit (winking emoji) |

27. Thereafter, DD shared two additional image files depicting the lewd and lascivious display of the genitals of an infant female. These images did not have the word "camera" displayed beneath the file. On the same day and over the next few hours, DD and Undercover Agent exchanged a number of messages, during which, DD continued to detail his sexual interest in minor females. DD also shared a video file depicting a toddler aged female whose genitals are being penetrated by the erect penis of an adult male. In the video sent, media control buttons could be observed at the bottom of the video.

28. On or about July 30, 2020, between 2:21 PM and 2:57 PM, DD shared two image files and one video file depicting child pornography. The video file is approximately thirty-two seconds in length and is further described below:

| File Identifier | File Description |
| --- | --- |
| [redacted]fea125d4ec | This video file depicts a nude adult female, a nude adult male and a nude toddler aged minor child. The adult female is holding the minor child face down with the child's head positioned towards the adult female and the child's buttocks are towards the adult male. The adult female manipulates the buttocks of the minor child to expose the child's anus towards the adult male. The erect penis of the adult male penetrates the anus of the child. Sound is available on the video file and the child can be heard whimpering and then crying as the adult male penetrates the child's anus with his penis. |

Based on my training and experience, this video file constitutes child pornography, as defined by 18 U.S.C. § 2256.

29. While they discussed the video, DD stated, "mhmm I'm already in bed enjoying (tongue sticking out emoji)." Approximately two hours later, DD shared a twelve-second video file depicting an adult male masturbating while lying on a bed. The video recording is toggling between a video file depicting child pornography that can be observed playing on a laptop computer located on a bed and the adult male. Undercover Agent asked if that was DD "enjoying the video" and DD confirmed it was him depicted in the video. The laptop computer in the video appeared to have the same media controls at the bottom of the video as observed in other video files depicting child pornography shared by DD with Undercover Agent.

30. Communication between Undercover Agent and DD continued into the early evening hours on July 30, 2020, and randomly thereafter to on or about August 11, 2020.

### C. Identifying Kik User "ddbigmeat"

31. Based upon the numerous image and video files depicting child pornography sent by DD to Undercover Agent via Kik Messenger, Undercover Agent consulted with forensically trained law enforcement partners to determine how to identify this Kik user. Previous legal process submitted to Kik Interactive, Inc/MediaLab, Inc., occasionally resulted in subject accounts being prematurely deactivated before the investigation was concluded, thus limiting the ability of law enforcement to identify the user(s).

32. Plano Police Detective and FBI Task Force Officer (TFO) Jeff Rich utilized a publicly available website to create an intentionally broken link that Undercover Agent shared with DD. During a conversation with DD, Undercover Agent shared the link, advising that one of her friends had shared a link of "good stuff" but that the Undercover Agent was not in a place to open the link. DD asked if the link was a scam and Undercover Agent messaged that her friend maintained the link had "good files." DD messaged that when he clicked on the link it said the image does not exist. Undercover Agent expressed she was not good with technical matters and that she would ask her friend to send the link again.

33. As background, when computers communicate across the Internet, each computer is required to have a publicly available Internet Protocol Address (IP Address) to enable the computers to send/receive data. TFO Rich used [redacted].link[7], a publicly available link tracker service, to create the link Undercover Agent shared with DD. [Redacted].link is a website that reveals the shared IP Address of the user when that user clicks on a link to obtain data filtered through their site.

34. Further, Picpasteplus.com, (hereinafter, "Picpasteplus"), is a commonly used temporary Internet-based, file-hosting service known to law enforcement to be utilized by individuals who wish to share and transmit digital files via the Internet. Once a file is uploaded to Picpasteplus, the website provides a link to the temporary hosted file. In this instance, the link was https://www.picpasteplus.com/v.php?i=ec92855942 and the file "shared" was an intentionally corrupt file. This file is designated as an image file, but the file is not a valid digital media file. The file in this case was intentionally named dc_1208.jpg.

35. TFO Rich provided the [redacted].link service the "broken" Picpasteplus URL listed above and [redacted].link then created a forwarding link to the original file hosted on Picpasteplus.

---

[7] A common use for [redacted].link and similar publicly available tracking websites is for businesses and analysts to review traffic to websites and referring pages to build their business.

As Internet traffic from any user who clicked the link is passed through the [redacted].link website, on the way to the Picpasteplus site, the shared IP Address information of the user is displayed on the [redacted].link website.

36. On or about July 30, 2020, at approximately 3:16 PM, in response to DD clicking on the link sent to him by Undercover Agent, the IP Address captured by [redacted].link was 47.24.105.58.

37. Subsequently, on or about July 30, 2020, TFO Rich issued an administrative subpoena to Charter/Spectrum Communications to identify the individual assigned to IP address 47.24.105.58 on July 30, 2020, between 3:15 PM and 3:21 PM CST. On August 3, 2020, a representative of Charter/Spectrum Communications responded to the request for records and provided information that during the date and times requested, IP Address 47.24.105.58 was assigned to an account registered to the following individual:

> Subscriber Name: **Curtis Noakes**
> Subscriber Address: 6308 Skipper Lane, Fort Worth, TX 76179
> Lease Info: Start: 02/25/2020     End: 07/29/2020
> Phone: [redacted]-6096
> Email: cnoakes@charter.net

38. Upon receipt of the above records, you Affiant noted the lease ended on July 29, 2020, and did not cover the date and times requested in the administrative subpoena. On August 4, 2020, TFO Rich contacted Charter/Spectrum Communications to inquire about the discrepancy in records requested.

On August 5, 2020, a representative from Charter/Spectrum Communications responded, advising their system updates 24-hours behind and that the subscriber information previously provided also had the IP address on July 30, 2020.

39. Also, when **DD/Noakes** joined the group and as he posted in other message strings, he identified himself as a 27-year-old white male living in Fort Worth. Database records were obtained on Curtis **Noakes** and, as **Noakes's** date of birth is [redacted] 1993, **Noakes** recently turned 27-years-old.

D. **Search Warrant Execution and Arrest of DD/Noakes**

40. Based on the foregoing, your Affiant applied for a search warrant for **Noakes's** residence in Fort Worth, Tarrant County, Texas, within the Northern District of Texas. On August 10, 2020, the Honorable Jeffrey L. Cureton, United States Magistrate Judge for the Northern District of Texas authorized a federal search warrant for that address/location. On August 12, 2020, your Affiant and other members of law enforcement executed the federal search warrant at **Noakes's** residence. **Noakes** and one other occupant were present at the premises when the search warrant was executed.

41. While the residence was being searched, **Noakes** was advised of his *Miranda* rights. The interview of **Noakes** was audio and video recorded. **Noakes** admitted to having a Kik Messenger account, however he could not recall his username or the profile image for his account. **Noakes** advised he last used the account approximately one week ago.

42. During the subsequent conversation, **Noakes** was shown screenshots of the group and the profile picture for DD. **Noakes** refused to acknowledge if he was familiar with the group or with the profile picture for the DD account.

43. Concurrent with your Affiant's interview of **Noakes**, law enforcement conducted an on-scene manual review of **Noakes'** Motorola cell phone after your Affiant guessed the passcode to the device. Your affiant observed a video file depicting a nude toddler-aged female sitting on the lap of an adult male who is nude from the waist down. The erect penis of the adult male is penetrating the genitals of the minor female. The file, which was visible in the Kik Messenger application of the phone, was sent to D.A. the same person who made Undercover Agent a moderator in the Kik Group where **Noakes** initiated contact with Undercover Agent.

44. Based on my training and experience, the above video file constitutes child pornography, as defined by 18 U.S.C. 2256(8). In reviewing other files on **Noakes'** Motorola cell phone, I observed a number of image and videos files depicting the sexual exploitation of children in Kik communications between **Noakes** and other Kik users. The video file described in paragraph 43 is one of the same video files that **Noakes** sent to Undercover Agent.

45. I am aware that the Internet is a means and facility of interstate and foreign commerce. I am also aware that third party messenger applications, such as Kik, utilize the Internet, a means and facility of interstate commerce, to send and receive messages, images, and videos.

## CONCLUSION

46. Based upon the aforementioned facts, your Affiant respectfully submits there is probable cause to believe that on or about July 30, 2020, in the Northern District of Texas, **Curtis Jason Noakes**, knowingly used the Internet and a third party messaging application to commit the offense of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A).

47. In consideration of the above, I respectfully request the Court issue a warrant authorizing the arrest of **Curtis Jason Noakes**.

Jennifer Mullican
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me the 12th day of August 2020, at 1:50 p.m, in Fort Worth, Texas.

JEFFREY L. CURETON
United States Magistrate Judge